Donna B. GRIER, Plaintiff,

v.

Donald RUMSFELD et al., Defendants.

Civ. A. No. 76–H–1521.

United States District Court,
S. D. Texas,
Houston Division.

March 8, 1979.

David T. Lopez, Houston, Tex., for plaintiff.

Richard H. Parker, Jr., Asst. U.S. Atty., Houston, Tex., for defendant.

## MEMORANDUM OPINION, FINDINGS OF FACT AND CONCLUSIONS OF LAW

COWAN, District Judge.

*Basic Issue and Finding*

The issue in this case is: Has plaintiff proved by a preponderance of the evidence that she is a victim of sex discrimination or that she is a victim of violation of the Equal Pay Act. The undersigned has concluded that plaintiff has not sustained her burden of proof on either theory.

*Factual Background*

Plaintiff is a talented, dedicated, loyal, long-time employee of the Texas Air National Guard. In 1962 she went to work for the Texas Air National Guard as a supply clerk.

At the time she commenced her employment with the Texas Air National Guard, women were not permitted to join the Texas Air National Guard. A significant issue, in the undersigned's analysis, is whether the plaintiff has established by a preponderance of the evidence that she would have become a member of the Air National Guard in 1962 even had she been legally permitted to do so. The evidence on this point is conflicting.

On the one hand, the plaintiff is a dedicated, patriotic, conscientious woman who undoubtedly would have been very pleased, in some respects, to have become a member of the Texas Air National Guard. In addition, she was and is an ambitious lady anxious to advance in her profession. She undoubtedly could have perceived, and would have perceived in 1962, that her chances for advancement would be much better as a member of the Air National Guard than as a non-member. In addition, the plaintiff has testified that in 1962 she could have passed a physical examination to join the Texas Air National Guard. Although this is a non-medical, non-expert, opinion which must, to some degree, be based upon speculation and conjecture, the court nevertheless gives it some weight and would assume that there is at least a possibility (although not established as a probability) that Donna B. Grier could have passed the physical in 1962 to become a member of the Air National Guard.

The factors on the other side of the balance, however, appear to the court more persuasive. First, in 1962, Mrs. Grier, a happily married woman, was the mother of a seven-year old boy. The evidence also establishes that in 1978 she is the mother of two young women who are members of the Texas Air National Guard. The evidence is not clear as to exactly when these young women were born, but it is manifest that in 1962 Mrs. Grier was the mother of at least one small child, and either had two other small children or was aware of the prospect of having more children. Mrs. Grier has testified that one of the reasons she did not join the Air National Guard after 1972 was that she had minor children. This same impediment existed in 1962. Second, Mrs. Grier testified that by 1971 when women became eligible to join the Texas Air National Guard, she could not have passed the physical because she was, by 1971, overweight. The court does not believe that it can legitimately assume or find that Mrs. Grier in 1962 could have passed the physical examination necessary to become a member of the Texas Air National Guard. There is no competent evidence that she could have done so. Proof of this fact would be difficult, but possible, through the testimony of Mrs. Grier's physicians, her medical records, and testimony of a physician familiar with the physical requirements for admission to the Texas Air National Guard in 1962. No proof of this nature has been submitted.

Bearing in mind, therefore, that the burden of proof on all contested issues of fact remains upon Mrs. Grier, the court is unable to find conscientiously that Mrs. Grier would have joined the Texas Air National Guard in 1962 for the following reasons:

1. Her family commitments militated against her placing herself in a position where she would have been susceptible to mobilization; and

2. There is no competent proof to satisfy the court, by a preponderance of the evidence, that Mrs. Grier in 1962 could in fact have passed the physical examination.

It could be argued that plaintiff's inability to establish by a preponderance of the evidence that she would have joined the Air National Guard in 1962 makes further inquiry and analysis unnecessary; however, Mrs. Grier's obvious sincerity and good faith makes more complete analysis of her case desirable.

In 1962, and at the present time, the Texas Air National Guard does have

some civilian employees who are non-members of the Guard. The number is small. The reason for this situation is that those responsible for the management of the Air National Guard attempt to use their best paid civilian employee slots to create a cadre of full-time employees who devote all of their working hours to the Texas Air National Guard, and who also attend meetings and summer camps, and who will provide a skeleton of experienced, fully ready personnel in the event of mobilization. Eighty-five percent of all civilian employees in the Texas Air National Guard, at all material times, have been members of this "cadre" of civilian employees who are also members of the Texas Air National Guard and who would be available to act as a skeleton and backbone of the organization in the event of mobilization. The undersigned specifically holds that there is a manifest and compelling "business" and national defense reason why the better paying civilian positions in the Air National Guard should be held by persons who are members of the Air National Guard and thus susceptible to mobilization.

From time to time, however, over the years local managers have had the option to hire a very limited number of civilian employees who are not also members of the Air National Guard. Formerly, a man would not be employed as a civilian unless he was willing to join and was qualified, physically and otherwise, to join the Texas Air National Guard. Accordingly, most, if not all, civilian employees who were not members of the Texas Air National Guard over the years have been women. Mrs. Grier is one of these women.

It could be persuasively argued that the Texas Air National Guard's policy over the years has actually discriminated against men—not women. For example, at the time Mrs. Grier went to work for the Guard in 1962, a man probably could not have obtained her job, if because of family commitments, or physical incapacities, he was unable to become a member of the Air National Guard. Generally speaking, as the court understands the evidence, only women were employed in positions like that which Mrs. Grier was employed to fill. Obviously there were, in the labor force, men who for one reason or another—such as inability to pass the physical, or family commitments—were not able to become members of the Air National Guard. A man having these disabilities would not have been hired in Mrs. Grier's position in 1962, and thus if the Air National Guard has discriminated, it has discriminated against men—not women. Mrs. Grier's position today is absolutely no different from that of a man who became a civilian employee of the Air National Guard in 1962 but who because of family commitments, or physical incapacity, did not become a member of the Air National Guard.

Plaintiff went to work as a supply clerk, and while she has held many jobs in the supply function, she has basically continued to function as a supply clerk. As indicated above, she is an extremely conscientious, dedicated, intelligent and hard-working woman. The supply function, according to testimony, is consistently understaffed. The Texas Air National Guard, like most military units, is constantly subjected to reorganizations because of personnel changes, new weapons systems and other developments. For obvious reasons, therefore, a stable, intelligent, permanent employee like Mrs. Grier is invaluable, and will inevitably perform work which is extremely valuable and responsible.

The circumstances described above have created situations in which Mrs. Grier, on many occasions during her career, has performed jobs which are actually more responsible than the paper description of her position might indicate. The rigid policy of the Air National Guard is to reserve the better paying jobs for members of the Guard who are susceptible to mobilization. This policy, therefore, has created a situation in which a person like Mrs. Grier, who is not a member and who cannot become a member of the Air National Guard, can never advance beyond a G–5 level. On many if not most of the occasions during the last few years, the work she has been performing would be compensated at a

higher wage rate, somewhere in the range of G–6 to G–8, if she were a member of the Air National Guard. The situation is clarified by reference to a specific position, i. e., the "Nors monitor" job.

One of the highly responsible jobs which plaintiff has performed over the last few years has been that of "Nors monitor." The Nors monitor is responsible for making certain that the unit at all times has on hand certain critical airplane parts, which if not available, can result in the inoperability of the unit's aircraft. The person performing the Nors monitor job, if a member of the Air National Guard, would normally be compensated in the classification of G–6 to G–8. Mrs. Grier has performed this job on many occasions over extended periods of time and her compensation is set at the level of a G–5. The question then becomes: Is she being required, or has she been required to perform equal work for unequal pay?

Although this court recognizes, acknowledges and appreciates the extremely valuable contribution which Mrs. Grier makes every day to the Texas Air National Guard, this court cannot conclude that the facts above create a situation in which Mrs. Grier does equal work for unequal pay for the following reason:

The member of the Texas Air National Guard who performs the Nors monitor function, may, in one sense, perform the same work as does Mrs. Grier, but in another sense there is a real difference. The difference is that the member of the Air National Guard who performs the Nors monitor job is also, in effect, on 24-hour a day, seven days a week, 365-days a year standby. The guard member is constantly susceptible to mobilization; Mrs. Grier is not. This susceptibility to mobilization is a critical difference. Mrs. Grier and the Texas Air National Guard member who is working as a Nors monitor may do the same functional work Monday through Friday, but they do not have the same job. This is true because the Texas Air National Guard member is subject to risks, hazards, potentialities of inconvenience and disruption of his or her personal life to which Mrs. Grier is not subject.

*Equal Pay Act*

That statute commonly known as the Equal Pay Act of 1963, Public Law 88–38, is codified at 29 U.S.C. § 206(d)(1), and the pertinent language of the statute is as follows:

> No employer having employees subject to any provisions of this section shall discriminate . . . between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which require equal skill, effort, and responsibility, and are performed under similar working conditions, except where such payment is made pursuant to · . . .
>
> (iv) a differential based on any other factor other than sex; . . .

The section does not afford the plaintiff in this cause any basis for relief because even in a situation where Mrs. Grier performs functionally the same task as does a member of the Guard; she is not performing the work under similar working conditions because the susceptibility to mobilization is a highly relevant and material working condition. In addition, the difference is based on a factor other than sex in that the differential is based upon the fact that the Air National Guard member is susceptible to mobilization and Mrs. Grier is not.

*Civil Rights Act of 1964*

The pertinent portions of the Civil Rights Act of 1964, Public Law 88–352, codified at 42 U.S.C. § 2000e–16(a) states, in its pertinent part, that:

> (a) Discrimination prohibited
>
> All personnel actions affecting employees or applicants for employment . . . military departments, as defined in Sec. 102 of Title V, U.S. Code . . . shall be made free from any discrimination based on . . . sex . . .

For the reasons stated herein under Factual Background and in the Specific Findings of Fact, the undersigned is persuaded that the personnel action relating to Mrs. Grier has been taken without any discrimination based on sex.

The relevant Title VII provision is 42 U.S.C. § 2000e–16. See *Jones v. Texas Air National Guard*, 584 F.2d 104 (5th Cir. 1978). Public Law 88–352, Title VII, Sec. 717 was added by amendment in March of 1972. It would appear therefore, that the Air National Guard's policy of excluding women prior to 1971, and at the time Mrs. Grier was employed, was not at the time an illegal employment practice. The question then arises as to the extent to which the defendant has the obligation under law to remove the effects of pre-Act discrimination. The inquiry must be whether or not the defendant's practices since 1972 carry forward "the effects of former discriminatory practices . . ." See *Local 189 United Papermakers and Paperworkers v. United States*, 416 F.2d 980, 983 (5th Cir. 1969). The court specifically finds that even if it could be established that the defendant's present practices carry forward the effects of past discrimination, this individual plaintiff has not established that she was the victim of such a practice. As indicated above, this individual plaintiff has not borne the burden of proof with reference to the question of whether or not she was a victim of a prior discriminatory practice.

Thorough analysis demands, however, that the question be asked: Would plaintiff have a case if she could demonstrate that in 1962, she would have joined the Air National Guard had she been permitted to do so and that she could have met all requirements.

In analyzing the problem from this point of view, the undersigned has attempted to apply the general analysis approved by the Fifth Circuit in *Local 189 United Papermakers, supra.* The inquiry therefore would appear to be whether or not Mrs. Grier has been denied promotions which she would have received but for her sex, by virtue of post-Act discrimination. The court cannot conclude that Mrs. Grier would have received promotions but for her sex. The factor which has limited Mrs. Grier's advancement in her employment is not her sex, but the fact that she is not a member of the Air National Guard. Her situation is exactly the same as that of a male who went to work for the Air National Guard in 1962 but because of physical incapacity or family commitments, did not become a member of the Air National Guard.

One possible inquiry under *Local 189 United Papermakers* is: What is Mrs. Grier's "rightful place" which she would have occupied but for illegal discrimination? The court cannot conclude that Mrs. Grier's "rightful place" is any higher than the place which she has attained because Mrs. Grier's advancement in the Air National Guard has been limited, not by her sex, but by the fact that she is not now, and perhaps never has been, qualified to become a member of the Air National Guard.

As pointed out by the Supreme Court in *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977), plaintiff in order to establish that the defendant had engaged in a pattern and practice of racial discrimination was required ". . . to establish by a preponderance of the evidence that racial (here sex) discrimination was the company's standard operating procedure—the regular rather than the unusual practice." There is no evidence in this record from which the court can determine that the defendant here engaged in, or practiced as a standard operating procedure, discrimination on the ground of sex at any time.

Study of *International Brotherhood of Teamsters v. United States, supra,* is also revealing in connection with the analysis of the above-styled case because there a critical fact was that after the effective date of Title VII, the defendant had continued to practice discrimination by continuing to employ only white drivers for line haul positions. There is no evidence in the case at bar that after 1972 the defendant discriminated against women in any degree.

An analysis of *International Brotherhood of Teamsters, supra,* also reveals that there is a critical difference between employment discrimination law and school desegregation law. Since 1968, it has been apparent that a school district has an obligation to root out every vestige of the previously existing segregated system root and branch. On the other hand, the analysis of the Supreme Court majority in *International Brotherhood of Teamsters, supra,* reveals that an employer, by virtue of § 703(h) of Title VI, 42 U.S.C. § 2000e–2(h) has an obligation to avoid post-Act discrimination but does not have an obligation to root out every vestige or remnant of pre-Act segregation. Accordingly, the defendant here had no legal obligation to eliminate every lingering effect of discrimination which was legal at the time it was practiced. *Teamsters* also establishes that even a seniority system which has the tendency to perpetuate pre-Act discrimination may be regarded as bona fide.

The case at bar, of course, does not involve a seniority system as such, but conceivably there could be an issue concerning the "bona fides" of the defendant's practices since 1972. In this connection, the court holds that the defendants have acted in good faith since 1971 in reserving the higher paid positions for persons who are subject to mobilization, and that their practice in this record is both rational and exercised in good faith.

In an effort to be certain, the court has analyzed this problem in the manner prescribed by the appellate courts and has attempted to apply the *McDonnell Douglas* analysis. See *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 at 800, 93 S.Ct. 1817 at 1823, 36 L.Ed.2d 668. It is true that the plaintiff is a member of a protected class. On the other hand, there is no evidence, in the court's judgment, that she has applied for a position for which she was qualified and been denied employment. The court's reasoning in this connection, is again predicated on the assumption that there is a fundamental difference between an Air National Guard employee who is susceptible to mobilization, and one, like Mrs. Grier, who

is not. Mrs. Grier has never applied for a job in the Air National Guard in which she would be subject to mobilization, and she has not shown, at any time, that she would have been qualified for a position in which she was subject to mobilization. The court recognizes that the *McDonnell Douglas* pattern is not the only means of establishing a prima facie case of individual discrimination, and the court has attempted to apply the *McDonnell Douglas* pattern here merely as an exercise to make certain that the court's analysis is, and has been, thorough and in accord with established law.

Of course, in the light of *International Brotherhood of Teamsters, supra,* it is apparent that plaintiff's failure to actually apply for membership in the Texas Air National Guard does not, in itself, mean that she is not entitled to relief. The chief fact here, however, is that Mrs. Grier has never shown that at any particular point of time she would have been qualified to and willing to subject herself to the mobilization requirements of Guard membership.

The burden which a person, who has never applied for employment, must bear is described in the following language from *Teamsters, supra* :

A nonapplicant must show that he was a potential victim of unlawful discrimination. Because he is necessarily claiming that he was deterred from applying for the job by the employer's discriminatory practices, his is the not always easy burden of proving that he would have applied for the job had it not been for those practices. Cf. *Mt. Healthy School District Board of Education v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471

. . .

*Id,* 431 U.S. 324, at 367, 97 S.Ct. at 1871.

The key to the undersigned's reasoning here is that Mrs. Grier has not proved that she would have applied for the job had the employment practices of the defendant been different.

### Specific Findings of Fact

The parties in their pretrial order in this cause have listed a number of contested

issues of fact. With reference to those contested issues of fact listed in the pretrial order approved by this court on the 10th day of January, 1979, the court makes the following specific findings of fact, to wit:

1. Plaintiff has been assigned to perform the same functional tasks for which males were compensated at a higher grade, both before and after 1972; however, the action of the defendants in assigning the plaintiff to perform the same tasks does not mean that the plaintiff was performing the same "job" which males were performing because a functional task in which the performer is susceptible to mobilization is inherently and basically different from the same functional task performed by a person not susceptible to mobilization.

2. The practice of excluding females from the Texas Air National Guard was in effect until such time as Mrs. Grier was disqualified from membership because of her weight and age; however, as noted above, the plaintiff has not established that she was qualified for membership before this date for the reasons stated above.

3. The court cannot conscientiously find and does not find in any degree that the past practice of excluding females from military membership in the Air National Guard has the present effect of discriminating against females seeking promotions to grades G–6 and higher because there is no proof before the court that any female who became a civilian employee of the Texas Air National Guard before that date upon which women were admitted to membership in the Texas Air National Guard was qualified to become a member of the Texas Air National Guard and would have become such a member if permitted to do so. Plaintiff has produced testimony from and relating to one other lady very much like Mrs. Grier who is also a conscientious, dedicated, extremely valuable civilian employee of the Texas Air National Guard whose advancement is limited because she is not a member of the Guard. On the other hand, there is no evidence that this other woman, or any other woman situated like Mrs. Grier, would actually have joined the Texas Air National Guard and been qualified to join the Texas Air National Guard if the rules of the Guard prior to 1971 had been different. In any event, since this case is not a class action, the only female whose case is really material is that of Mrs. Grier.

4. The court declines to find, and does not find, that the plaintiff has been denied promotion as a result of present discriminatory effects against females which result from the past practice of excluding females from military membership in the Air National Guard.

5. The court cannot hold, and does not hold, that the plaintiff has ever applied for a position for which she was qualified but not accepted. There is no credible evidence of such application.

6. Mrs. Grier, when performing the same *functional task* as does a Guard member, is not performing her job "under similar working conditions" as does the Guard member because the Guard member's susceptibility to mobilization is an important "working condition."

7. Any differential in pay between Mrs. Grier and a Guard member is a differential based upon the Guard member's susceptibility to mobilization and is thus a differential based on a ". . . factor other than sex."

8. Plaintiff's position is no different from that of a man who went to work for the Air National Guard as a supply clerk in 1962 but who because of family commitments, unwillingness to be subject to mobilization, or inability to pass the physical examination did not become a member of the Air National Guard.

9. Defendant has demonstrated a compelling business necessity for reserving its better paying positions for persons who are members of the Air National Guard. This necessity consists primarily in the necessity for creating a situation in which key civilian employees are subject to mobilization in the event of a national emergency.

10. Plaintiff has not established any intent to discriminate against women.

11. The policies of the defendant of which plaintiff complains are not and have never been a mere pretext to justify discrimination against women.

For the reasons stated herein, judgment will be entered for the defendant, and plaintiff's cause dismissed with prejudice.